UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **KATY CREDEUR** | : | **DOCKET NO. 16-cv-566** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **ST. CHARLES GAMING CO., LLC** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

In this litigation, Katy Credeur ("Credeur") is suing her former employer, St. Charles Gaming Company, LLC d/b/a Isle of Capri Casino ("Isle of Capri"), for discrimination, harassment, unlawful and retaliatory discharge under the Americans with Disabilities Act ("ADA"). Doc. 1. Before the Court is a Motion for Summary Judgment [doc. 13]; a Motion to Seal Documents [doc. 14], and a Motion for Hearing on the Motion for Summary Judgment [doc. 15], filed by the defendant, Isle of Capri. Credeur filed a response in opposition to the Motion for Summary Judgment. Doc. 22. Isle of Capri filed a reply in support of its Motion for Summary Judgment. Doc. 23.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636. Doc. 26. For the reasons stated below, **IT IS RECOMMENDED** that the Motion for Summary Judgment [doc. 13] be **DENIED,** the Motion to Seal [doc. 14] be **DENIED**, and the Motion for Hearing [doc. 15] be **DENIED AS MOOT**.

**I.**
**BACKGROUND**

Isle of Capri is an entertainment and gaming establishment in Lake Charles, Louisiana. Doc. 13-2, Exh. A, para. 3. Credeur was hired by Isle of Capri as a hostess in September 2014.

Doc. 1, para. 3; doc. 13-2, exh. A, para. 4. In early September 2015, Credeur was hospitalized due to mental health issues, causing her to miss work. Doc. 1, para 5; doc. 13-2, exh. A, para. 4. Prior to returning to work, Credeur was required to return completed medical leave of absence forms to Isle of Capri, including a "Healthcare Provider Questionnaire," to be completed by her treating physician for the purpose of determining what accommodations Credeur may require upon returning to work. Doc. 13-2, exh. A, paras. 4, 5.

On September 10, 2015, Isle of Capri claims that it received an incomplete Healthcare Provider Questionnaire and a note from Credeur's treating physician which stated that Credeur suffered from anxiety and depression and that certain aspects of her job contributed to her condition. Doc. 13-2, exh. A, para. 6 (citing appendix 1). On September 10 or 11, 2015, Credeur spoke with the Human Resources Coordinator for Isle of Capri (the "HR Coordinator"), Lena Cryar. Doc. 13-2, exh. A, para. 9, appendix 2; doc. 22-2. The HR Coordinator told Credeur that she could not return to work until her doctor provided further information, setting a deadline of September 25, 2015. Doc. 22-2, para. 4; doc. 13-2, exh. A, para. 9, appendix 2. Credeur was told that she could use the time in the interim to "apply for transfer to a position, if available, that can suite [sic] your need." Doc. 13-2, exh. A, appendix 2. The same day, the HR Coordinator drafted a letter to Credeur's physician, stating that Isle of Capri was "unable to release [Credeur] to her position until we have further clarification," and setting forth instructions for completing the attached Healthcare Provider Questionnaire. Doc. 13-2, exh. A, para. 9, appendix 3.

The parties dispute the subsequent events. Isle of Capri claims they ultimately received a completed Healthcare Provider Questionnaire stating that Credeur would have "reduced occupational efficiency and impaired concentration;" suggesting "ten minute breaks every two hours and an option to transfer to a position with less personal interaction;" and indicating that

Credeur could return to work as of September 10, 2015. Doc. 13-2, exh. A, para. 10 (citing appendix 4). According to Isle of Capri, Credeur never contacted anyone at Isle of Capri "to work out the details of her return" after they received the completed forms from her physician. Doc. 13-2, exh. A, paras. 10-11. Instead, Credeur called the Strategic Development Manager, Cristina Lorio, on September 24, 2015 to tell her that "she was resigning her employment due to her medical condition." Doc. 13-2, exh. A, para. 11. According to the Strategic Development Manager, she asked Credeur "to confirm her resignation in writing," which Credeur did the next day, September 25, 2015. Doc. 13-2, exh. A, para. 12 (citing appendix 6)

Credeur, however, claims that after her September 10 or 11, 2015, meeting with Cryar she was unable to reach her doctor for an additional medical release, so she contacted her employer and was told that Isle of Capri considered her "unfit" for employment. Doc. 22-2, para. 5. According to Credeur, the Strategic Development Manager told her "that if [Credeur] ever wanted to have the option for employment with [Isle of Capri] in the future [she] had to resign or else [she] would be terminated and ineligible for any future employment." Doc. 22-2, para. 6. Credeur claims that Isle of Capri did not allow her to return to work after September 10, 2015; did not offer to transfer her to a new position; and did not allow her "to attempt to work with the accommodations suggested by [her] treating physician." Doc. 22-2, paras. 7–9.

On April 26, 2016, Credeur filed her Complaint against Isle of Capri alleging "discrimination and harassment, as well as unlawful and retaliatory discharge under the [ADA]." Doc. 1, para. 9.[1] On January 4, 2017, Isle of Capri filed a Motion for Summary Judgment, arguing that: (1) Credeur cannot make out a claim for constructive discharge because she voluntarily

---

[1] Prior to filing her Complaint, Credeur filed a Charge of Discrimination against Isle of Capri with the Louisiana Commission on Human Rights and the United States Equal Employment Opportunity Commission ("EEOC"), and on March 30, 2016, the EEOC issued a Dismissal and Notice of Rights providing ninety days from receipt of the notice within which to bring her claims in federal court. Doc. 13-3, exhs. B, C.

resigned her employment, and (2) Credeur cannot make out a claim for failure to accommodate because she failed to meaningfully engage in the interactive process to find an accommodation. Doc. 13-2, p. 11. On the same day, Isle of Capri filed a Motion for Hearing on its Motion for Summary Judgment [doc. 15] and a Motion to Seal documents it filed in connection with its Motion for Summary Judgment because they contain sensitive medical information. Doc. 14. On January 18, 2017, Credeur filed a response in opposition to the Motion for Summary Judgment claiming that it is too early to move for summary judgment because discovery has only just begun, and asserting the existence of disputed questions of material fact based on the differing account of events in her affidavit and the affidavit of Isle of Capri's Strategic Development Manager, which Credeur also claims contains statements not based on personal knowledge. Doc. 22, pp. 1-5. On January 31, 2017, Isle of Capri filed a reply in support of its Motion for Summary Judgment asserting that Credeur did not rebut the material evidence submitted by Isle of Capri, nor did she cite any record evidence beyond that cited by Isle of Capri that shows there is a genuine dispute as to a material fact. Doc. 23, pp. 1, 4-5.

## II.
## LAW & ANALYSIS

### A. *Motion for Summary Judgment*

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material only when it might affect the outcome of the suit under the governing law, and a fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of showing that there is an absence of a genuine issue of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). After such a showing, the burden shifts to the non-movant to show that there is a genuine factual issue for trial by citing specific evidence in the record, beyond the pleadings, that supports its assertions that a material fact is genuinely in dispute. *Id.*at 324; *see also Diaz v. Kaplan Higher Educ., L.L.C.,* 820 F.3d 172, 176 (5th Cir. 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). The court may not weigh evidence or make credibility determinations when considering a motion for summary judgment. *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987) (quoting *Anderson*, 477 U.S. at 255). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.*

The ADA, 42 U.S.C. §§ 12101 *et seq.*, "prohibits discrimination in employment against a qualified individual on the basis of [her] disability." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221-22 (5th Cir. 2011). To succeed on a claim brought under the ADA, a plaintiff must establish a *prima facie* case: "(1) that [she] has a disability; (2) that [she] was a qualified for the job; [and] (3) that [she] was subject to an adverse employment decision on account of [her] disability." *Equal Empl't Opportunity Comm'n v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (citing *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). Because the parties do not raise the issues of whether Credeur has a disability or was qualified for the job, the Court will consider these elements undisputed for the purposes of this ruling.

1. *Constructive Discharge*

Isle of Capri claims that summary judgment is appropriate on the issue of whether Credeur was constructively discharged because it claims the evidence shows that Credeur did not return to work after she was cleared by her doctor and did not follow up on Isle of Capri's offer of a job transfer. Doc. 13-2, p. 8. Instead, according to Isle of Capri, Credeur resigned without giving Isle

of Capri a chance to accommodate her medical needs. *Id.* Credeur claims that she tried to return to work pursuant to her doctor's release but was told that she could not return without additional doctor's orders; that she was unfit for employment; and that she would need to resign or else be terminated and ineligible for any future employment with Isle of Capri. Doc. 22, p. 2; doc. 22-2.

Constructive discharge is an adverse employment decision under the ADA. *See e.g.*, *Gordon v. Acosta Sales & Mktg, Inc.*, 622 F. App'x 426, 431-32 (5th Cir. 2015). To establish constructive discharge, an employee must either show that her working conditions were so intolerable that a reasonable employee would feel compelled to resign, *id.* at 431, or that she found herself forced to either voluntary resign or be terminated. *See Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997) (citing *Burks v. Okla. Pub. Co.*, 81 F.3d 975, 978 (10th Cir. 1996); *Jenkins v. Louisiana*, 874 F.2d 992, 996 (5th Cir. 1989)).

The evidence in the record shows a genuine dispute as to whether Credeur was forced to voluntarily resign or face termination. The parties' primary sources of evidence on this issue are affidavits. Credeur submitted an affidavit in which she stated that the Strategic Development Manager of Isle of Capri told her that she would have to resign or else she would be terminated and ineligible for future employment with Isle of Capri. Doc. 22-2. Isle of Capri submitted the affidavit of the Strategic Development Manager who stated that she did not ask or pressure Credeur to resign. Doc. 13-2, exh. A, para. 17. The Court also notes the differing accounts in these affidavits of whether, and on what date, Isle of Capri received a completed Healthcare Provider Questionnaire and whether Credeur was cleared by Isle of Capri to return to work prior to her resignation.[2] *See* doc. 22-2; doc. 13-2, exh. A, paras. 13-16. The Court may not weigh the evidence

---

[2] The affidavit of the Strategic Development Manager also contains statements not within her personal knowledge. *See e.g.*, doc. 13-2, exh. A, para. 14 ("Neither myself nor anyone else at the company discriminated against Ms. Credeur."). The Court does not consider any statement made in this affidavit that is not within the personal knowledge of the affiant. *See* Fed. R. Civ. P. 56(c)(4).

-6-

or make credibility determinations at the summary judgment stage. *Leonard*, 828 F.2d at 294. Because the affidavits submitted by the parties provide differing accounts of the events leading to Credeur's resignation, the Court finds that there is a genuine dispute as to whether Credeur was forced to voluntarily resign or be terminated, which precludes summary judgment.

   2. *Failure to Accommodate*

Isle of Capri moves for summary judgment on Credeur's failure-to-accommodate claim arguing that Credeur "failed to engage in any meaningful interactive process" with Isle of Capri to find a reasonable accommodation because Credeur did not respond to Isle of Capri's offer to apply for a transfer to a new position before she resigned. Doc. 13-2, pp. 10-11. Credeur claims that Isle of Capri would not let her return to work with the accommodations suggested by her doctor and that an offer to apply for a job transfer, if one is available, does not suffice as an accommodation of Credeur's disability. Doc. 22, p. 2.

To succeed on a failure-to-accommodate claim under the ADA, a plaintiff must make a *prima facie* case that: (1) "[she] is a qualified individual with a disability;" (2) "the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013) (internal quotations and citation omitted). "When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *Equal Emp't Opportunity Comm'n v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009). "The need for *bilateral* discussion arises because each party holds information the other does not have or cannot easily obtain." *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999) (internal quotations and citation omitted) (emphasis in original). An employer violates the ADA if it is

unwilling to engage in a good faith interactive process which leads to a failure to reasonably accommodate an employee. *Id.* However, because the responsibility to find a reasonable accommodation is shared, courts have held that an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer." *Id.* Under the ADA, a reasonable accommodation may include reassignment to a vacant position. 42 U.S.C. § 12111(9)(B).

The Court finds there are questions of material fact as to whether the responsibility for the breakdown of the 'informal, interactive process' was traceable to Credeur, the employee. *See Loulseged*, 178 F.3d at 736. As with the constructive discharge claim, discussed *supra*, the evidence presented by the parties provides conflicting accounts of this interactive process. First, as discussed *supra*, there questions of material fact exist as to whether Isle of Capri prevented Credeur from returning to work and told Credeur that she had to resign in order to be eligible for future employment with Isle of Capri. *See* doc. 22-2; doc. 13-2, exh. A, paras. 13-17.

Second, the parties contest whether Isle of Capri's offer for Credeur to apply for a transfer to a position, if one was available, is sufficient to meet Isle of Capri's obligation to engage in an interactive process to find a reasonable accommodation. Neither party has provided case law on the issue of whether an employer's offer to allow an employee to apply for a transfer is sufficient. Isle of Capri cites cases in which the employee rejected specific job transfers identified by the employer. Doc. 13-2, p. 10 (citing *Ned v. Opelousas Gen. Hosp.*, No. 04-1536, 2007 WL 952072 (W.D. La. Mar. 26, 2007); *Toronka v. Cont'l Airlines, Inc.*, 411 F. App'x 719 (5th Cir. 2011)). However, the facts in those cases are distinguishable from the facts before this Court because Isle of Capri does not claim that it identified specific job vacancies that could be suitable for Credeur.

The Court has not found a Fifth Circuit case that considered an employer's offer to allow an employee to apply for a job without evidence of further specificity as to a possible job transfer. However, the E.E.O.C. and other circuit courts suggest that, under the ADA, an employer has an obligation to assist an employee seeking reassignment by identifying available positions within the company. *See* U.S. Equal Emp't Opportunity Comm'n, E.E.O.C. 915.002, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act ("28. … [T]he employer is obligated to inform an employee about vacant positions for which s/he may be eligible as a reassignment. However, an employee should assist the employer in identifying appropriate vacancies to the extent that the employee has access to information about them."); *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 677 (7th Cir. 1998) ("[T]he ADA places a duty on the employer to ascertain whether he has some job that the employee might be able to fill." (internal quotations and citation omitted)); *Mengine v. Runyon*, 114 F.3d 415, 420 (3rd Cir. 1997) (suggesting that the interactive process is best served when both the employer and employee work together to identify suitable positions).

The only evidence presented by Isle of Capri on this issue is that the Human Resources Manager wrote in a memorandum to Credeur that she could use her time off to apply for a job transfer if one was available. Doc. 13-2, exh. A, appendix 2. While we do not decide that Isle of Capri was obligated under the ADA to narrow the field of possible transfer positions for Credeur, its evidence is not enough to show that Credeur was responsible for the breakdown in the interactive process, particularly considering the questions of material fact that exist regarding the circumstances leading to Credeur's resignation. Accordingly, summary judgment is inappropriate on this claim.[3]

---

[3] The Court notes Isle of Capri's arguments in its reply memorandum that Credeur did not cite record evidence to support her positions, other than record evidence cited by Isle of Capri, in her memorandum in opposition and her

### B. *Motion to Seal*

Isle of Capri seeks the Court to seal its memorandum in support of its Motion for Summary Judgment; Exhibit A to the Motion for Summary Judgment; and its Statement of Uncontested Material Facts because they contain medical information concerning Credeur. Doc. 14-1. Federal Rule of Civil Procedure 5.2 governs the protection of privacy for filings made with the court. Isle of Capri moves the Court to seal filings that include information far outside the scope of Rule 5.2 without providing any argument or supporting legal authority for its position that the entirety of these filings should be sealed. Accordingly, the Court recommends that Isle of Capri's Motion to Seal be denied except that the filings should be redacted to comply with Rule 5.2.

### III.
#### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the Motion for Summary Judgment [doc. 13] be **DENIED**. **IT IS FURTHER RECOMMENDED** that the Motion to Seal [doc. 14] be **DENIED** and Isle of Capri refile the documents with appropriate redactions pursuant to Federal Rule of Civil Procedure 5.2. **IT IS FURTHER RECOMMENDED** that the Motion for Hearing [doc. 15] on the Motion for Summary Judgment be **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

---

response to Isle of Capri's Statement of Uncontested Material Facts, citing Local Rule 56.2 and Rule 56 of the Federal Rules of Civil Procedure. Doc. 23, pp. 3-4. While this is true, neither rule specifically requires Credeur to cite to record evidence not cited by Isle of Capri. The Court finds Credeur's response to Isle of Capri's Statement of Uncontested Material Facts sufficient. Further, the Court may consider materials in the record that have not been cited. Fed. R. Civ. P. 56(c)(3). The record in this case is not extensive, and the Court finds it appropriate to consider Credeur's affidavit despite the fact that she did not provide citations to it in her memorandum in opposition. However, the Court cautions Credeur that it may not consider any future assertions she makes if they are not properly supported.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers this 18th day of January, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE